UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FILED
MAR 22 2005
CLERK'S OFFICE
U.S. DISTRICT COURT
EASTERN MICHIGAN

MICHAEL A. CHIRCO and
DOMINIC MOCERI,

Plaintiff,

v.

ROSEWOOD VILLAGE, LLC, *et al.*,

Defendants.

CIVIL ACTION NO. 03 CV 72145 DT

DISTRICT JUDGE DENISE PAGE HOOD

MAGISTRATE JUDGE VIRGINIA M. MORGAN

18

## REPORT AND RECOMMENDATION

### I. Introduction

This copyright infringement suit comes before the court on a motion for summary judgment filed by defendants Rosewood Village LLC, Rock Homes Construction, Inc., and Jeffrey Cohen (hereinafter referred to collectively as "defendants"). Oral argument was held on the motions on March 7, 2005. The court has considered the arguments, briefs, and pleadings. For the reasons stated below, the court recommends that the motion be **GRANTED.**

### II. Background

Plaintiffs Dominic Moceri and Michael Chirco are in the business of developing real estate. As part of their business, they construct, lease, and sell condominiums and apartments in the Detroit metropolitan area. Plaintiffs have developed a number of condominium and apartment sites that utilize "Aberdeen"-style building plans, a design plaintiffs developed

through their association with the architectural firm of Ronald E. Mayotte & Associates. Mayotte obtained copyrights on certain Aberdeen-style architectural plans and works, including the "Aberdeen Plans" and "Aberdeen Works," which were incorporated into plaintiff's condominium property located in Sterling Heights, Macomb County, Michigan, and the "Knollwood Plans," which were used in an apartment project in Macomb County known as the Manors at Knollwood. Plaintiffs own all of the rights to these plans and works pursuant to an exclusive licensing agreement with Mayotte.

In May, 2001, defendant Rock Homes Construction, Inc., ("Rock Homes") was in the process of developing a condominium complex in Pittsfield Township, Washtenaw County, Michigan, known as the Rosewood Village Condominium Development ("Rosewood Village), when they received a letter from plaintiffs' counsel stating that the proposed development would infringe upon plaintiffs' copyrighted architectural works. Plaintiffs demanded that Rock Homes cease and desist the infringing activities. Rock Homes proceeded with the development.

Plaintiffs filed the instant copyright infringement action on June 2, 2003, naming as defendants (1) Rock Homes, (2) Jeffrey Cohen, the President of Rock Homes, (3) Rosewood Village LLC, (4) Alexander V. Bogaerts & Associates, the architectural firm that prepared the plans and specifications for Rosewood Village, and (5) Alexander Bogaerts. Plaintiffs allege in their complaint that the Rosewood Village condominiums are substantially similar to the Aberdeen-style apartments and condominiums developed by plaintiffs and that defendants copied plaintiffs' copyrighted plans and drawings in developing the Rosewood Village condominiums,

in violation of the Copyright Act, 17 U.S.C. § 101, *et seq*. Plaintiffs seek monetary and injunctive relief.

## III. Analysis

### (A) Summary Judgment Standard

Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56(b), which states that "[a] party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move without or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the evidence and draw all reasonable inferences in favor of the non-movant. See Matsushita Electric Industrial Co., Ltd. et al. v. Zenith Radio Corp., et. al., 475 U.S. 547, 587, 106 S.Ct. 1348, 1356 (1986); see also B.F. Goodrich Co. v. U.S. Filter Corp., 245 F.3d 587, 591-92 (6th Cir. 2001). Once the moving party has carried his or her burden of demonstrating the absence of a genuine issue of material fact, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita, 475 U.S. at 587, 106 S.Ct. 1356. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592 (1968)).

In copyright infringement actions, "granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly." Wickham v. Knoxville Int'l Energy Exposition, Inc., 739 F.2d 1094, 1097 (6th Cir. 1984). However, a court may nonetheless grant summary judgment for a defendant where "as a matter of law a trier of fact would not be permitted to find substantial similarity." Id.

**(B) Copyright Infringement**

Pursuant to 17 U.S.C. § 102(a)(8), original "architectural works" are entitled to copyright protection. Prior to 1990, the Copyright Act protected architectural plans as "pictorial, graphic, and sculptural works," 17 U.S.C. § 102(a)(5), but provided no protection for "architectural works" *per se*. See Leicester v. Warner Bros., 232 F.3d 1212, 1216-17 (9th Cir. 2000). As indicated in Leicester, "[b]uildings were considered to be 'useful articles,' not protected by the Copyright Act." Id. at 1216 (citation omitted). In 1990, Congress, in order to comply with the United States' obligations under the Berne Convention for the Protection of Artistic and Literary Works, passed the Architectural Works Copyright Protection Act of 1990 (AWCPA). The AWCPA established a "new category of copyright protection for works of architecture." Leicester, 232 F.3d at 1217. The Act defines an "architectural work" as follows:

> An "architectural work" is the design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design, but does not include individual standard features.

17 U.S.C. § 101. Accordingly, copyright protection extends to both the plans for a building and to the building itself.

Plaintiffs allege in this matter that defendants copied plaintiffs' copyrighted plans and works in creating the plans for the Rosewood Village condominiums. "To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003). Defendants do not seek summary judgment on the ground of lack of ownership of the copyrighted works. Nor do they challenge the validity of plaintiffs' copyrights. Accordingly, the court will focus its discussion on the copying element.

Where, as in the case before the court, there is no direct evidence that the defendants copied the work in question, the plaintiff can create "an inference of copying by showing (1) access to the allegedly-infringed work by the defendant(s) and (2) a substantial similarity between the two works at issue." Ellis v. Diffie, 177 F.3d 503, 506 (6th Cir. 1999). If the plaintiff successfully creates an inference of copying, the defendant may rebut the inference by offering "evidence of independent creation of the allegedly infringing work." Id. at 507.

**(1) Access to Copyrighted Works**

"Access merely means an opportunity to view the protected material." Robert R. Jones Assoc., Inc. v. Nino Homes, 858 F.2d 274, 277 (6th Cir. 1988). Though the "access element of a copyright infringement claim is usually the less problematic," access cannot be inferred "through mere speculation or conjecture." Murray Hill Pubs. v. Twentieth Century Fox, 361 F.3d 312, 316 (6th Cir. 2004)(citations omitted). Further, "[a] mere assertion of access,

unsupported by probative evidence is inadequate. Nor is a 'bare possibility' of access sufficient. A plaintiff must establish that defendant(s) had a 'reasonably possibility' to view plaintiff's work." Id. (citations omitted).

In support of their claim of access, plaintiffs rely upon the following contentions: (1) Aberdeen-style drawings have been filed in each city in which such projects have been constructed, including, but not limited to, Shelby Township; (2) plaintiffs have regularly advertised Aberdeen-style developments in Detroit newspapers, on websites, and elsewhere; (3) defendant Cohen purportedly placed a telephone call to plaintiffs' office asking who the architect was for a certain Aberdeen-style development; (4) an Aberdeen-style development was discussed on a radio program co-hosted by David Hall, an employee of an entity known as Rock Financial; and (5) an individual named Brian Neeper, an employee of Bogaerts & Associates who helped prepare the allegedly infringing plans, was once employed by plaintiffs and actually worked on the Knollwood project in 1988.

"Aberdeen-style" drawings may well have been filed in a number of cities, including Shelby Township, and plaintiffs' may well have advertised Aberdeen-style developments in Detroit newspapers, on websites, and elsewhere. However, plaintiffs are apparently asking the court to take the assertions made in their brief regarding these matters as true, because they have produced no evidence to substantiate them. Plaintiffs have not attached any of the alleged advertisements. Thus, there is no evidence in the record regarding when the ads were run, what

publications or websites they appeared in, or the content of the ads.[1] In addition, it is unclear whether a copyright infringement access claim could be established based on information or floor plans freely disclosed to the general public. To make such an argument would potentially "read out" the threshold access requirement. As for the alleged plan filings, the court has been presented no evidence as to where the plans have been filed, exactly what was filed with these various cities, whether the cities in which the plans were filed freely permit inspection and copying by the public, or whether the plans are still on file in these cities.

It is axiomatic that in order to withstand a motion for summary judgment, the non-movant must present "*concrete evidence* on which a juror could return a verdict in his favor." Frank v. D'Ambrosi, 4 F.3d 1378, 1384 (6th Cir. 1993)(emphasis added). A party cannot create a genuine issue of material fact by reliance upon unsupported assertions made by counsel in a brief or legal memorandum. See, e.g., Nieves v. University of Puerto Rico, 7 F.3d 270, 276, n. 9 (1st Cir. 1993)("Factual assertions by counsel in motion papers, memoranda, briefs, or other such 'self-serving documents,' are generally insufficient to establish the existence of a genuine issue of material fact at summary judgment"). Accordingly, the court, in deciding defendants' motion, cannot simply rely upon the assertions made by plaintiffs' counsel in their response brief regarding the existence and/or content of these advertisements and plan filings. If, in fact,

---

[1]Plaintiffs state in their response brief that they "have produced extensive specimens of regular advertising of the Aberdeen-style developments in Detroit papers, on websites, and elsewhere." Plaintiffs' Brief in Opposition to Defendants' Motion for Summary Judgment, p. 8-9. However, no advertisements are attached to their brief, and if such "extensive specimens" exist elsewhere in the record, plaintiffs have failed to direct the court to where they may be found.

evidence regarding the advertisements and plan filings exists in the record, plaintiffs have failed to direct the court to where it may be found. On a motion for summary judgment, the non-movant bears the burden of presenting to the court the evidence on which it relies or to point out where in the record such evidence may be found. It is not the court's responsibility to comb through the record to ascertain whether there is evidence sufficient to support the non-movant's position. See Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989)("A district court is not required to speculate on which portion of the record the nonmoving parties relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim").

It is unclear as to the force and effect of the radio show "evidence." There is no evidence in the record that Mr. Hall has, or has ever had, any association, relationship, or contact with Rock Homes or any of the individual defendants in this case, and no evidence that Rock Financial is associated in any manner with Rock Homes. Again, perhaps there is such evidence in the record, but plaintiffs have not directed the court to where it may be found. The court accords no weight to plaintiffs' speculative assertions regarding the radio show.

There being no evidence to support plaintiffs' assertions regarding the advertisements, the plan filings, or the radio show, plaintiffs' claim of access rests upon the alleged phone call and Mr. Neeper's former association with plaintiffs.[2] Regarding the latter issue, according to the

[2]The bulk of the "evidence" plaintiffs have presented regarding the phone calls and Mr. Neeper's association with the Knollwood project was submitted by way of a post-hearing supplemental brief. The court did not request such a brief, and plaintiffs did not seek leave to file the brief. Moreover, there is no provision in the Local Rules allowing for the filing of such a

deposition testimony of plaintiff Chirco, Mr. Neeper worked on the Knollwood project as a laborer while he was either a high school or college student. Construction of the Knollwood complex apparently began in late 1988, well over ten years before the Rosewood Village condominiums were constructed, and there is no evidence that Mr. Neeper ever viewed or had access to the Knollwood Plans during that time. Even if Mr. Neeper had viewed the plans at that time, it is difficult to believe that he could commit them to memory and accurately recount the information in sufficient detail more than ten years later to produce identical or substantially similar plans therefrom. As for the phone calls, while plaintiff's have produced some evidence that there was an exchange of phone calls between Rock Homes and plaintiffs' office during the relevant time frame, there is absolutely no evidence that any substantive discussions resulted from this exchange of calls. In any event, the court is not persuaded that the phone calls have any significant bearing on the question of access.

Based on the foregoing, the court finds that plaintiffs have failed to present sufficient evidence to create a genuine issue of material fact with respect to the issue of access. Plaintiffs' claim of access is based largely on their own unsupported assertions, and the "evidence" they have produced is highly speculative and conjectural. It establishes, at the very best, a "bare possibility of access." Murray Hill Pubs., supra, 361 F.3d at 316. In sum, plaintiffs have simply

---

brief. The court would thus be well within its authority in striking the brief. However, the court will decline to do so. Defendants filed a response to the brief and thus have had a sufficient opportunity to rebut the assertions made in plaintiffs' brief. Further, the court will accept the brief in the interest of adjudicating the motion on the merits rather than on procedural grounds.

failed to marshal sufficient evidence to warrant this court in finding that there is a genuine issue of material fact as to the access element.

Notwithstanding the above, plaintiffs' failure to produce any probative evidence on the question of access does not, by itself, require entry of summary judgment in favor of defendants. As the Sixth Circuit stated in Murray Hill, 361 F.3d at 317 (citations omitted):

> Where the plaintiff cannot prove access, the copyright infringement claim can still succeed, but only by proof of a higher level of similarity that the merely substantial. The quantum of similarity that will substitute for proof of access is "striking similarity." Such striking similarity precludes the possibility of independent creation. Of course, even in a striking similarity case, absent copying, there can be no infringement. However, striking similarity carries the burdens of proof that the infringing work is sufficient[ly] similar as to intrude into the copyrighted work's protection *and* that the defendant must have had access to the copyrighted work, even if the plaintiff can provide no extrinsic proof of that fact.

Accordingly, if the record contains sufficient evidence for a reasonable trier of fact to conclude that defendants' design is strikingly similar to plaintiffs' design, defendants' motion must be denied even though plaintiffs have introduced no probative evidence regarding the question of access.

**(2) Similarity Between the Works at Issue**

In determining whether two works are sufficiently similar to warrant an inference of copying, courts in the Sixth Circuit must utilize the two-step approach set forth in Kohus, supra, 328 F.3d at 853-57. At the first step, the court must "filter out the unoriginal, unprotectible elements – elements that were not independently created by the inventor, and that possess no minimal degree of creativity[.]" Id. at 855. Thus, the court is required to filter out "mere abstract

ideas," "elements dictated by efficiency," and "*scenes a faire*," which the Sixth Circuit characterized as "'those elements that follow naturally from the work's theme, rather than from the author's creativity,...or elements that are 'dictated by external factors such as particular business practices.'" Id. at 855-56 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[F][3]). Further, "elements of a copyright defendant's work that were created prior to access to a plaintiff's work are to be filtered out... just as non-protectible elements are." Murray Hill, 361 F.3d at 326.

Once the unprotectible elements have been filtered out, the court must turn to the second step of this two-step process, which requires the court to determine whether the allegedly infringing work is sufficiently similar to the protectible elements of the original to give rise, in connection with any evidence of access, to an inference of copying. Kohus, 328 F.3d at 856. This analysis must be made "from the perspective of the intended audience." Kohus, 328 F.3d at 856.

Turning to the first step of this analysis, plaintiffs assert that the Aberdeen style consists of a unique and original combination of the following elements: (1) twelve units per building with garages located at the ends of the building, giving the building an overall "H" shaped footprint; (2) the buildings have four first-floor units and eight second-floor units, four of which are located atop the garages (i.e., "carriage style" units); (3) individual, private access to the attached garages for each unit; (4) individual entryways to the outside with no common hallway for tenants to share or maintain; (5) stacked ranch, back-to-back units; (6) the front and rear of the buildings are architecturally identical; and (7) where lot size is limited, the buildings can be

built with six units and six garages. Defendants contend in their motion that all of the above-cited features are common features that have been used in many prior developments, including developments designed by Mr. Bogaerts, and, therefore, that all of them should be filtered out.

There is little question that taken individually, there is nothing original or distinctive about any of these elements. Indeed, plaintiffs own expert, Charles Merz, testified at his deposition that twelve-unit buildings, carriage-style units, back-to-back stacked ranches, etc..., have been incorporated in many other condominium developments and that these features were commonplace in the building industry. Deposition of Charles Merz, pp. 75-79. Thus, viewed separately, there is nothing original or minimally creative in the use of any one of these features in an architectural work. Moreover, these elements constitute mere ideas, subject to use by any architect. See Kohus, 328 F.3d at 855 ("It is axiomatic, to begin with, that mere abstract ideas are not protectible, but the mere expression of an idea is"). However, the court does not agree that these elements should be filtered out of the similarity analysis.

Unlike with literary works, for example, where there are innumerable ways to craft a story, architects are subject to zoning requirements and a myriad of other restrictions in the manner in which they craft their "art." Moreover, to create a functional and desirable dwelling, certain features must be present. Given these limitations, an architect simply cannot avoid using common architectural features in designing a dwelling. However, the originality of an architectural work lies not in the mere use of any individual feature or group of features, but in the manner in which those features are arranged. Thus, an architectural plan or work that utilizes features common in the building industry can nonetheless constitute an original, protectible

expression. See, e.g., Sturdza v. United Arab Emirates, 281 F.3d 1287 (D.C. Cir. 2002)("Considering the work as a whole is particularly important because protectible expression may arise through the ways in which artists combine even unprotectible elements").

In this matter, while Mr. Merz conceded that none of the features incorporated in the Aberdeen-style developments is unique in and of itself, he also testified that the combination of those features created a unique architectural design. Deposition of Charles Merz, p. 75-86. Mr. Merz further stated by way of affidavit that "[n]one of the above features necessarily is distinctive in and of itself, yet I am aware of no other multifamily design which incorporates all of the above features other that Plaintiffs'[.]" Affidavit of Charles Merz, ¶ 3. Defendants' experts stated that each of these features was present in Mr. Bogaerts' prior works, but neither specifically stated that all of them were present in a single prior development designed by Mr. Bogaerts or, for that matter, any other prior development. Though none of the features identified by plaintiffs is in itself original, the court finds for the purposes of this Motion that the manner in which those elements have been combined, as a whole, to create the Aberdeen-style constitutes an original expression. Accordingly, in comparing plaintiffs' Aberdeen-style works to defendants' allegedly infringing works, the court will view the Aberdeen works as a whole.

As noted above, the similarity analysis is to be conducted from the perspective of the intended audience. In most copyright infringement cases, the "intended audience" will be "the lay public, in which case the finder of fact's judgment should be from the perspective of the lay observer or...the reasonable person." Kohus, 328 F.3d at 857. In such a case, expert testimony is neither necessary nor admissible at the second step of the similarity analysis. Where the intended

audience possesses specialized expertise, expert testimony "will usually be necessary to educate the trier of fact in those elements for which the specialist will look." Id. However, the Sixth Circuit has warned that "in any given case, a court should be hesitant to find that the lay public does not fairly represent a work's intended audience." Id. (quoting Dawson v. Hinshaw Music Inc., 905 F.2d 731, 736 (4th Cir. 1990).

Neither plaintiffs nor defendants have expressly addressed this issue in their respective briefs. However, both have submitted expert affidavits addressing, inter alia, the similarities and differences between plaintiffs' architectural plans an works and defendants' allegedly infringing plans and works. Thus, the parties appear to agree that expert testimony is required in this matter. It is not necessary to reach the issue of whether the testimony of the parties' experts should be considered at this stage of the similarity analysis because, as is discussed below, the same result is reached regardless of whether the expert testimony is considered.

Clearly there are a number of similarities between the Aberdeen design and the Rosewood Village design. Both have an "H–shaped" footprint, twelve units arranged as four first-floor and eight second-floor units, architectural fronts and rears identical to each other, direct entry from the garage, etc.... In short, the designs share the same basic footprint and configuration. However, there are substantial differences as well. As shown by the overlays attached to Mr. Merz's affidavit, the rooflines of the buildings, viewed from both the front and the side, bear no resemblance whatsoever. Further, the facades of the two buildings appear from the overlays to bear numerous dissimilarities. In addition to the differing rooflines, the doors, windows, chimneys, and balconies are placed differently. In fact, when the Rosewood overlay is

placed atop the document showing the front and side elevations of the Aberdeen building, there is not a single door, window, or other aspect of Rosewood building that lines up with the Aberdeen building. There are clearly significant differences in the exteriors of the building. Further, the overlays showing the footprint and floor plans of the respective designs indicate that there are a number of differences between the two designs. Though the Rosewood building bears an "H"–shaped footprint and a similar configuration to the Aberdeen building, there are significant differences in terms of the actual footprints of the buildings and the location and dimensions of the rooms within each unit. In sum, the court finds that while the Rosewood design bears some similarities to the Aberdeen design in terms of the overall shape and layout, no reasonable fact finder could conclude based on a comparison of the two designs as a whole that defendants' design is "strikingly similar" to plaintiffs' design.[3]

Turning to the issue of the expert testimony, plaintiffs' have not pointed to any testimony by Mr. Merz regarding the issue of how the architectural works at issue are similar, and his affidavit is of no probative value regarding the issue of similarity. Regarding the affidavit, Mr. Merz offers no explanation as to the similarities between the Aberdeen design and the Rosewood design. He merely states in conclusory fashion that "in view of the similarities between Mr. Bogaerts' [sic] final design to Plaintiffs' Aberdeen-style drawings, I believe that Mr. Bogaerts

---

[3]The court notes, without deciding, that a reasonable trier of fact could possibly conclude that defendants' design is "substantially similar" to plaintiffs' design. However, in light of the plaintiffs' failure to produce any probative evidence regarding the question of access, plaintiffs must do more than show substantial similarity in order to give rise to an inference of copying. Rather, they must show that the designs are "strikingly similar." Murray Hill, 361 F.3d at 317. Plaintiffs have failed to do so.

copies the Aberdeen-style design in drawing the Gateway Oaks plan, making only minor modifications to the Aberdeen style." Affidavit of Charles Merz, ¶ 7.[4] That is the sum total of Mr. Merz's analysis of the question of similarity. In light of Mr. Merz's failure to set forth any facts in support of or basis for his opinion, his statement regarding the similarities between the Aberdeen design and the Rosewood design has no probative force. See, e.g., Daniels v. American Honda Motor Co., 1992 WL 361271 *4 (6th Cir.(Mich.))("When, as here, an expert's affidavit is submitted in opposition to a motion for summary judgment, the affidavit must set forth specific facts from the record to support its conclusions). The testimony and affidavits of defendants' experts regarding the substantial differences between the Aberdeen design and the Rosewood design are thus essentially unopposed. Accordingly, to the extent expert testimony is admissible upon the question of similarity, plaintiffs have failed to present sufficient expert testimony to withstand defendants' motion.

Based on the foregoing, the court finds that plaintiffs have failed to present sufficient evidence on the questions of access and similarity to permit a rational finder of fact to conclude that defendants copied plaintiffs' Aberdeen-style plans and works. Accordingly, the court concludes that defendants are entitled to summary judgment.

**(C) Laches**

Defendants also claim that they are entitled to summary judgment on the ground of laches. This issue requires no extended discussion. At a minimum, a defendant claiming laches

---

[4]While Mr. Merz referred in his affidavit to Gateway Oaks, which was the subject of a prior case involving plaintiffs, the court assumes that he meant to refer to Rosewood Village.

must demonstrate that he has been materially prejudiced as a result of the plaintiff's delay in asserting his rights. See Watkins v. Northwestern Ohio Tractor Pullers Ass'n, 630 F.2d 1155, 1160 (6th Cir. 1980). Defendants have failed to make any such showing. Accordingly, their claim of laches is without merit.

**IV. Conclusion**

For the reasons stated above, the court recommends that defendants' motion for summary judgment be **GRANTED.**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length

unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

Dated: MAR 2 2 2005

VIRGINIA M. MORGAN
UNITED STATES MAGISTRATE JUDGE

PURSUANT TO RULE 77 (d), FRCivP
COPIES HAVE BEEN MAILED TO THE FOLLOWING

ON 3-22, 05

COURT CLERK