UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**MICHAEL A. CHIRCO and**
**DOMINIC MOCERI,**

      Plaintiffs,

v.

**ROSEWOOD VILLAGE, LLC.,**
**ROCK HOMES CONSTRUCTION, INC.,**
**JEFFREY COHEN, ALEXANDER**
**V. BOGAERTS & ASSOCIATES, P.C.,**
**and ALEXANDER V. BOGAERTS,**

      Defendants.

_____/

Civil Action No. 03-CV-72145-DT

HONORABLE DENISE PAGE HOOD

### ORDER REGARDING PLAINTIFFS' MOTION FOR REHEARING AND RECONSIDERATION and DEFENDANTS ALEXANDER V. BOGAERTS & ASSOCIATES, P.C. AND ALEXANDER V. BOGAERTS' MOTION FOR VOLUNTARY DISMISSAL

**I.    INTRODUCTION**

This matter is before the Court on Plaintiffs' Motion for Rehearing and Reconsideration of Order Granting Summary Judgment to Defendants and Defendants Alexander V. Bogaerts & Associates, P.C. and Alexander V. Bogaerts' Motion for Voluntary Dismissal and Entry of Final Judgment. On September 29, 2005, the Court entered an Order adopting the Magistrate Judge's Report and Recommendation granting Defendants' Motion for Summary Judgment. Plaintiffs timely filed a Motion for Reconsideration on October 14, 2005.

**II.    ANALYSIS**

    **A.    Motion for Reconsideration Standard**

The Local Rules of the Eastern District of Michigan provide that any motion for

reconsideration shall be served not later than ten (10) days after entry of such order. E.D. Mich. LR 7.1(g)(1). No response to the motion and no oral argument thereon shall be allowed unless the Court, after filing of the motion, otherwise directs. E.D. Mich. LR 7.1(g)(2). The Local Rule further states:

> (3) **Grounds**. Generally, and without restricting the discretion of the Court, motions for rehearing or reconsideration which merely present the same issues ruled upon by the Court, either expressly or by reasonable implication, shall not be granted. The movant shall not only demonstrate a palpable defect by which the Court and the parties have been misled but also show that a different disposition of the case must result from a correction thereof.

E.D. Mich. LR 7.1(g)(3).

The Court finds that Plaintiffs have demonstrated a palpable defect by which the Court and the parties have been misled and that a different disposition of the case would result from a correction of any error.

"To succeed in a copyright infringement action, a plaintiff must establish that he or she owns the copyrighted creation, and that the defendant copied it." *Kohus v. Mariol,* 328 F.3d 848, 853 (6th Cir. 2003). In most cases, a plaintiff may have no direct evidence of copying, and, in such cases, a plaintiff may establish an inference of copying by showing: 1) access to the allegedly-infringed work by the defendant; and 2) a substantial similarity between the two works at issue. *Id.* at 853-54 (quoting *Ellis v. Diffie,* 177 F.3d 503, 506 (6th Cir. 1999)).

Under Fed. R. Civ. P. Rule 56(c), the Court must view the evidence submitted in light of the non-moving party and summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law." Fed. R. Civ. P. 56(c); *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In copyright infringement cases "granting summary judgment, particularly in favor of a defendant, is a practice to be used sparingly." *Wickham v. Knoxville Int'l Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir. 1974) (citations omitted).

**B.     Access**

"Access merely means an opportunity to view the protected material" or to copy plaintiff's work. *Robert R. Jones Assoc., Inc. v. Nino Homes*, 858 F.2d 274, 277 (6th Cir. 1988); *Murray Hill Pubs. v. Twentieth Century Fox*, 361 F.3d 312, 316 (6th Cir. 2004)(citations omitted). Access, however, cannot be inferred through "mere speculation or conjecture." *Id.* Neither may a finding of access rest on "mere assertion" or "bare possibility." *Id*. The "availability" of the work, is merely speculation, which creates no more than a "bare possibility" that a defendant had access to the work. *Jason v. Fonda,* 698 F.2d 966, 967 (9th Cir. 1982) (Incorporating findings in *Jason v. Fonda,* 526 F. Supp. 774, 776 (1981)); *Raum v. Norwood,* 93 Fed. Appx. 693, 696 (6th Cir., Case No. 02-3181 Feb. 23, 2004) (unpublished) ("[P]laintiffs must show 'significant, affirmative and probative evidence' of a chain of access to survive a summary judgment motion by the defendants.") (quoting *Tisi v. Patrick,* 97 F. Supp. 2d 539, 547 (S.D. N.Y. 2000)).

As this Court noted in its Order accepting the Magistrate Judge's Report and Recommendation, the Magistrate Judge properly applied the "access" standard to the evidence before her and that the court is not required to speculate which portion of the record a party relies upon, nor is the court obligated to wade through and search the entire record of a case or other cases

filed in the District,[1] as Plaintiffs argue, for some specific facts that may support a party's claim. *See Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). However, since filing their response, Plaintiffs have more clearly articulated their arguments regarding "access" in their various briefs, including their Motion for Reconsideration.

Plaintiffs have created a genuine issue of material fact to rebut the individual Defendants' deposition testimony that they never viewed Plaintiffs' plans and never contacted Plaintiffs' architect regarding the plans. Plaintiffs' architect confirms that he was never contacted by any Defendant. (Mayotte Dep., p. 110) Regarding the alleged telephone call by one of the Defendants, Jeffrey Cohen, to Plaintiffs' office, the Court continues to believe the message slip submitted by Plaintiffs shows no substantive discussions during the telephone call. However, Plaintiffs have submitted evidence that the telephone call was dated March 31, 2000, *before* the completion of Defendants' plans. The message slip establishes that Defendant Cohen had knowledge of Plaintiffs' "Aberdeen" style buildings.

As to Brian Napeer, who purportedly could have revealed Plaintiffs' plans to Defendants, although Plaintiff Michael Chirco could not recall how old Mr. Napeer was when he worked on Plaintiffs' Knollwood project during his vacations, Mr. Napeer certainly could have been familiar with the architectural plans and had the opportunity to view and observe the actual Knollwood buildings being developed. Mr. Napeer went on to work with Defendants' architect, Alexander V.

---

[1] The undersigned alone has three separate cases involving the same architectural plan owned by Plaintiffs against three different builders/projects. (This case, 03-72145, Case Nos. 01-71403 and 03-74600.) There are at least four more cases before other judges involving the same architectural plan filed by Plaintiffs against various builders/projects. (Case Nos. 00-73390 (Steeh), 01-72015 (Roberts), 02-70485 (Roberts), 02-73188 (Borman)). The record in this case alone is voluminous.

Bogaerts, who developed Defendants' Rosewood Village project. Mr. Bogaerts admitted in his deposition that the initials "BN" on the accused plans are Mr. Napeer's initials. (Bogaerts' Dep., p. 57) Given the connection between Defendants' Rosewood Village project and Plaintiffs' Knollwood project through Mr. Napeer, along with Mr. Bogaerts having knowledge of Plaintiffs' Aberdeen-style buildings, the plans having been filed with various municipalities and the proximity of Plaintiffs' projects to Defendants' Rosewood Village project, there are sufficient questions of fact as to whether Defendants had access to Plaintiffs' plans and architectural works.

### C. Substantially Similar

In *Murray Hill,* the Sixth Circuit noted:

> Where the plaintiff cannot prove access, the copyright infringement claims can still succeed, but only by proof of a higher level of similarity than the merely substantial. ... The quantum of similarity that will substitute for proof of access is 'strikingly similar.'

*Murray Hill,* 361 F.3d at 317. Because the Court finds genuine issues of material fact as to whether Plaintiffs can prove access, the "substantially similar" standard will be applied, not the higher proof of access of "strikingly similar."

The Sixth Circuit requires a two-step analysis to determine the "substantial similar" element: 1) identifying which aspects of the artist's work, if any, are protectible by copyright; and, 2) determining whether the allegedly infringing work is "substantially similar" to the protectible elements of the artist's work. *Kohus,* 328 F.3d at 855.

"The essence of the first step is to filter out the unoriginal, unprotectible elements that were not independently created by the inventor, and that possess no minimal degree of creativity ... through a variety of analyses." *Id.* at 855 (internal citations omitted). In cases involving a functional object rather than a creative work, expert testimony may be required to establish what

5

elements, if any, are necessary to the function of the object. *Id.* at 856. *Scenes a faire*, those elements that follow naturally from the work's theme, rather than from the author's creativity, or elements that are dictated by external factors such as particular business practices, should also be filtered out. *Id.* "Unoriginal work enjoys no copyright protection." *Murray Hill,* 361 F.3d at 318. "[W]here an element occurs both in the defendant's prior work and the plaintiff's prior work, no inference of copying can be drawn." *Id.* at 326.

Once the unprotectible elements have been filtered out, the second step is to determine whether the allegedly infringing work is substantially similar to the protectible elements of the original which is based on the judgment of the targeted audience, generally the lay observer, or the ordinary reasonable person. *Kohus,* 328 F.3d at 856-57. Where the target audience of the object or work possesses specialized expertise, expert testimony may be necessary to educate the trier of fact in those elements for which the specialist audience will look. *Id.* at 857.

As noted by the Magistrate Judge, Plaintiffs contend that the Aberdeen style consists of a unique and original combination of the following elements: 1) twelve units per building with garages located at the ends of the building, giving the building an overall "H" shaped footprint; 2) the buildings have four first-floor units and eight second-floor units, four of which are located atop the garages (i.e., "carriage style" units); 3) individual, private access to the attached garages for each unit; 4) individual entryways to the outside with no common hallway for tenants to share or maintain; 5) stacked ranch, back-to-back units; 6) the front and rear of the buildings are architecturally identical; and 7) where lot size is limited, the buildings can be built with six units and six garages. Defendants claim that these elements are common features which have been used in many prior developments, including developments designed by Defendants' architect, Mr. Bogaerts.

6

Defendants claim these elements should be filtered out. The Magistrate Judge did not filter out these elements in the similarity analysis, citing *Sturdza v. United Arab Emirates,* 281 F.3d 1287 (D.C. Cir. 2002).

In *Sturdza,* the district court proceeded item by item, comparing how each concept was expressed in each of the two building designs, finding that the two building designs were decidedly different. *Sturdza,* 281 F.3d at 1297. The D.C. Circuit agreed with the district court's filtering out analysis that many elements of the accuser's designs were unprotectible ideas. *Sturdza,* 281 F.3d at 1297. The court noted that to hold otherwise would render basic architectural elements unavailable to architects generally which runs afoul of the very purpose of the idea/expression distinction which protects society's interest in the free flow of ideas. *Id.* However, the D.C. Circuit noted that while they agreed that the accused design differed from the accuser's design, they found that the district court overlooked several important respects in which the accused design expressed particular architectural concepts which they found were similar to the accuser's design, such as the "overall look and feel" of the two designs. *Id.* The D.C. Circuit went on to analyze the accused design's "expression" of "architectural concepts," comparing such expression of architectural concepts to the accuser's design. *Id.* at 1298. The D.C. Circuit concluded that although both designs were different in some ways, the accused design was sufficiently similar with respect to both the individual elements and overall look and feel for a reasonable jury to conclude that the two were substantially similar. *Id.* at 1299.

Analyzing the elements identified by Plaintiffs, reviewing Defendants' Exhibit 2 to their motion and the schematic drawings submitted by Plaintiffs attached to their Motion for Reconsideration, the Court finds these elements, by themselves, are not protectible since they are

concepts and ideas that are common in many architectural plans and buildings. Plaintiffs' expert, Charles Merz, admits in his deposition that he did not filter out any unprotectible elements before comparing Plaintiffs' plans to Defendants' plans. (Merz Dep., pp. 52-53, 146-47) Mr. Merz further testified that Plaintiffs' plans, specifically, the spatial relationship of the units and the garages to each other, is an idea that is common and that the spatial arrangements relating to the units were present in Defendants' architect's design created in 1980. (Merz Dep., pp. 100, 101, 135-36, 161, 179-81)

However, looking at the various drawings and the "overall look and feel" of the two designs, the Rosewood design's "expression of architectural concepts" is sufficiently similar to Plaintiffs' Aberdeen style design and building for a reasonable jury to conclude that the two are substantially similar. Both designs show a building with twelve units per building with garages located at the ends of the building, giving the building an overall "H" shaped footprint. Both buildings have four first-floor units and eight second-floor units, four of which are located atop the garages (i.e., "carriage style" units). All of the units in both buildings have individual, private access to the attached garages. The units in both buildings have individual entryways to the outside with no common hallway for tenants to share or maintain. Both designs include stacked ranch, back-to-back units. The front and rear of both buildings are architecturally identical. Plaintiffs have shown that where lot size is limited, both buildings can be built with six units and six garages. The placement of the bedrooms, bathrooms, living room, entryways, and balconies all appear to be in similar places, with some slight differences. Although the front and side elevations of both the Aberdeen and the Rosewood buildings show that there may be differences in the roof lines and window placements, the doorway entrances appear to be in substantially the same place.

There may be slight differences in the Rosewood design from the Aberdeen style design. However, the individual elements, although by themselves are not protectible, along with the overall look and feel of the design of the two buildings, are sufficiently similar for a reasonable jury to conclude that the two designs are substantially similar. The Court reconsiders its prior Order and denies Defendants' Motion for Summary Judgment.

### D. Independent Creation

"[A]n inference of copying is rebuttable by evidence of independent creation of the allegedly infringing work." *Ellis*, 177 F.3d at 507. Although Defendants' architect testified he had never seen Plaintiffs' plan and that he independently created Defendants' plan based on a culmination of his earlier works (Bogaerts Dep., pp. 123, 141), in light of the Court's finding as to Mr. Napeer's involvement in both the Plaintiffs' and Defendants' projects, there is a genuine issue of material fact as to whether Defendants' architect independently created Defendants' plan.

### E. Motion to Voluntary Dismiss and Entry of Final Judgment

Because the Court has reconsidered its previous order and denied Defendants' Motion for Summary Judgment, the Motion to voluntary Dismiss and Entry of Final Judgment filed by Bogaerts is denied.

### III. CONCLUSION

For the reasons set forth above,

IT IS ORDERED that Plaintiffs' Motion for Reconsideration **(Docket No. 148, filed October 14, 2005)** is GRANTED. The Magistrate Judge's Report and Recommendation **(Docket No. 124, filed March 22, 2005)** is ACCEPTED IN PART and REJECTED IN PART as more fully set forth above.

IT IS FURTHER ORDERED that Defendants' Motion for Summary Judgment **(Docket No. 105, filed December 28, 2004)** is DENIED.

IT IS FURTHER ORDERED that Defendants Alexander V. Bogaerts & Associates, P.C. and Alexander V. Bogaerts' Motion for Voluntary Dismissal and Entry of Final Judgment **(Docket No. 152, filed November 1, 2005)** is DENIED.

IT IS FURTHER ORDERED that Defendants' Motion for Costs and Attorney Fees **(Docket No. 146, filed October 12, 2005)** is DENIED without prejudice.

IT IS FURTHER ORDERED that Defendants' Motion for Attorney Fees and Costs **(Docket No. 151, filed November 1, 2005)** is DENIED without prejudice.

IT IS FURTHER ORDERED that the Judgment entered in this case is SET ASIDE and the case REOPENED.

IT IS FURTHER ORDERED that a Status Conference be held in this matter on **Tuesday, October 10, 2006, 2:30 p.m.**

    /s/ DENISE PAGE HOOD  
DENISE PAGE HOOD  
United States District Judge

DATED: September 28, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2006, by electronic and/or ordinary mail.

S/William F. Lewis  
Case Manager